UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHAREE BUTLER,

        Plaintiff,

    v.

CITY OF SACRAMENTO, SACRAMENTO POLICE DEPARTMENT and OFFICER MICHELLE PEREZ,

        Defendants.

/

NO. CIV. S-07-755 LKK/DAD

O R D E R

Plaintiff sues under 42 U.S.C. § 1983 and alleges various state claims. She names as defendants the city of Sacramento, its police department and Detective Michelle Perez, alleging, inter alia, that plaintiff was unlawfully detained and arrested.

Pending before the court is defendants' motion for summary judgment on all claims. Plaintiff's claims arise out of her detention between the warrant sanctioned search of plaintiff's car and subsequent search of her home. The court resolves the matter upon the parties' papers and after oral argument. For the reasons set forth below, the motion is granted.

1

## I. FACTS[1]

Sacramento police obtained a warrant authorizing the search of plaintiff's house, a separate house, plaintiff's car, plaintiff's cousin Brian Lee, and a man whose physical description matched plaintiff's fiancé. The affidavit supporting this warrant averred that police had been informed that Lee was a cocaine distributor, and that police had observed plaintiff's fiancé and Lee engage in behavior that could have been a drug transaction, after which the fiancé drove to plaintiff's house.[2]

Police began execution of the warrant at approximately 8:15 p.m. on June 28, 2006. At that time, officers observed plaintiff and her fiance exit her house, enter her car, and drive to a nearby Wal-Mart. In the parking lot, police "boxed in" plaintiff's car using an unmarked Ford Explorer SUV. Defendant Perez emerged with her gun drawn. Shortly thereafter a number of additional Sacramento police officers arrived on the scene and exited vehicles with guns drawn and pointed at plaintiff. Plaintiff was handcuffed with her arms behind her back. Plaintiff contends that the application of handcuffs resulted in injury. Butler Deposition at 67:5-16, 68:7-25,

---

[1] The facts presented here are largely undisputed; facts that are not obviously agreed upon are noted with a citation to their evidentiary support in the record. The standard for the court's approach to disputed facts is provided below.

[2] This description is taken almost entirely from plaintiff's complaint. Compl. ¶ 12. However, plaintiff apparently disputes some aspect of this description now. Plaintiff's Separate Statement of Undisputed Facts ¶ 2. The dispute, however, does not appear to be relevant to disposition of the instant motion.

69:1-25.  The officers drove plaintiff's vehicle to the rear of the Wal-Mart, where the officers searched the car. Plaintiff was detained throughout this time.

At the conclusion of the search of the vehicle, Perez informed plaintiff that the officers had found no contraband. Plaintiff, however, was not released from custody. Instead, Perez drove the Ford Explorer to plaintiff's residence with plaintiff handcuffed in the front seat.  The trip between the plaintiff's car and her house lasted approximately five minutes.  Plaintiff's car was left in the store parking lot with all windows down and unlocked.  Butler Depos. 61:18-25, 62:1-2.

Officers then searched plaintiff's residence.  Plaintiff contends that when officers entered the premises, they pepper-sprayed her dog, rather than accept plaintiff's offer to take control of the animal.  Butler Deposition at 81:23-25, 82:1-24. At some point during the search, officers removed plaintiff from the Ford Explorer, escorted her inside her residence, and ordered her to sit in the living room.  At approximately 11:30 p.m., Detective Perez informed plaintiff that no contraband had been discovered in the search, removed plaintiff's handcuffs and exited the residence. Plaintiff was detained for a total of approximately three hours.

**II. STANDARD FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and

3

1  that the moving party is entitled to judgment as a matter of
2  law.  Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398
3  U.S. 144, 157 (1970); <u>Poller v. Columbia Broadcast System</u>, 368
4  U.S. 464, 467 (1962); <u>Jung v. FMC Corp.</u>, 755 F.2d 708, 710 (9th
5  Cir. 1985); <u>Loehr v. Ventura County Community College Dist.</u>,
6  743 F.2d 1310, 1313 (9th Cir. 1984).
7       Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility
> of informing the district court of the
> basis for its motion, and identifying
> those portions of "the pleadings,
> depositions, answers to interrogatories,
> and admissions on file, together with the
> affidavits, if any," which it believes
> demonstrate the absence of a genuine issue
> of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  <u>Id</u>.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>Id</u>. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Id</u>.  In such a circumstance, summary judgment

4

should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 455 U.S. 951 (1980).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

for the nonmoving party, Anderson, 242 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of

the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### III. ANALYSIS

The crux of plaintiff's claims is the allegation that defendant Perez acted without justification when, after concluding the search of plaintiff's vehicle, Perez continued to detain her and then transported her to her residence.

Defendants move for summary judgment on the grounds that 1) Perez is entitled to qualified immunity; 2) there is no evidence of an unlawful official city policy, custom, or practice which caused plaintiff to be deprived of a constitutional right; 3) if the court grants summary judgment on the federal claims, the court should decline to exercise supplemental jurisdiction over the state law claims; and 4) as a matter of law, plaintiff cannot prevail on the state law claims because the defendants' activities were lawful. See Def.'s Mot. Summ. J. 2. The court concludes below, that plaintiff cannot prevail on her federal claims, and declines to

7

exercise supplemental jurisdiction over the state law claims. Thus Defendants' motion to dismiss will be granted.

**A.  Detective Perez Is Entitled to Qualified Immunity**

Defendant Perez argues that qualified immunity protects her from plaintiff's section 1983 claim.  The court evaluates this argument pursuant to the two step framework articulated in Saucier v. Katz, 533 U.S. 194 (2001).

### 1.  Qualified Immunity

Government officials enjoy qualified immunity from section 1983 suits for civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity is evaluated in two steps.  Saucier, 533 U.S. at 201.  The initial inquiry is whether, "taken in the light most favorable to the party asserting the injury, [] the facts alleged show the [defendant's] conduct violated a constitutional right."  Id. If so, the court moves to the second inquiry: whether the right was "clearly established" at the time of the violation, such that a reasonable officer could have believed the challenged conduct would not violate the law.  Id.

The Supreme Court has prohibited skipping to the second step, requiring courts to resolve the first step before

////

considering step two. Saucier, 533 U.S. at 201. [3]

## 2. Saucier's First Step: Plaintiff Has Made a Showing of a Constitutional Violation

Plaintiff argues that Detective Perez violated her Fourth Amendment rights in deciding to detain plaintiff during the trip between the parking lot (where her car was searched) and her house. This is the sole issue, because plaintiff has not argued that any other conduct--for example, her detention during the searches of her car or house, violated the Fourth Amendment.[4]

Plaintiff argues that this detention violated the Fourth Amendment because it was not based on a warrant or probable cause and was not otherwise reasonable. Defendant argues that a search warrant founded on probable cause implicitly carries with it the limited authority to detain occupants of the premises while a proper search is conducted, and that the

---

[3] In a recent grant of certiorari, the Court directed the parties "to brief and argue the following question: "Whether the Court's decision in Saucier[] should be overruled?"" Pearson v. Callahan, ___ U.S. ___, 128 S. Ct. 1702, 1702-03 (2008).

[4] Plaintiff does allege that, because the detention during this interval between searches was unreasonable, the subsequent detention during the search of the house was also unreasonable. However, in opposing the present motion, plaintiff has not argued that the detention accompanying the search of the house suffered from any independent defect. It thus appears that although plaintiff's complaint attacked a broader range of defendant's conduct she has since abandoned this position.

9

detention here was incident to such a search. Michigan v. Summers, 452 U.S. 692, 705 (1981). This court concludes that although the detention was "incident to" a search, it exceeded the limited authorization provided by Summers.

      a.   Each Detention Was Incident To A Search

Under existing Fourth Amendment doctrine, the reasonableness of defendants' conduct depends on how the events surrounding the conduct are analyzed. Defendants argue that the events together constituted a single search. As such, they argue that the detention occurred in the middle of, and was therefore incident to, a search. Conversely, plaintiff argues that the searches of the car and the house constituted separate searches, and that the detention between the two was not incident to either of them.

The court concludes that the searches of the car and the house constituted two distinct searches although a single warrant authorized both searches. The searches of the car and house were conducted at different locations and different times. Both interpreting the facts in the light most favorable to the plaintiff (the nonmoving party) as required by summary judgement practice, and as a matter of common sense, the court concludes that the events constituted two separate searches.[5]

---

[5] Defendants have had ample opportunity to challenge this interpretation, as the court adopted it in its earlier order on defendants' motion to dismiss. Then as now, defendants have not

10

Nonetheless, the court's conclusion does not compel a determination that the seizure of plaintiff were not incident to each search. The implicit authority to detain incident to a warranted search is not limited to the precise moments in which a search occurs. This is not to say that the time and distance are irrelevant; instead, the Summers evaluation accounts for these factors, because it will generally be the case that as time and distance increase, detention does less to further the government's interests. See United States v. Reinholz, 245 F.3d 765, 778 (8th Cir. 2001) (treating detention of criminal defendant who was at work, at least a twenty-five-minute drive from his residence, as incident to search of the residence, concluding that the detention was unreasonable under Summers).

        b.  Under Summers, The Intervening Detention Was Unreasonable

The remaining part of the analysis under Saucier's first step requires the court to determine whether the facts, so interpreted, demonstrate a violation of a constitutional right.

A search warrant founded on probable cause implicitly carries with it the limited authority to detain occupants of the premises while a proper search is conducted. Michigan v. Summers, 452 U.S. 692, 705 (1981), Dawson v. City of Seattle, 435 F.3d 1054, 1066 (9th Cir. 2006) (holding that Summers

---

cited any authority supporting a contrary interpretation.

11

applies to all searches, not only searches for contraband). This authority, although subject to some limits, is very broad. The Supreme Court recently stated that "An officer's authority to detain incident to a [warranted] search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." Muehler v. Mena, 544 U.S. 93, 98 (2005). Under Muehler "the duration of a detention may be coextensive with the period of the search, and require no further justification. Dawson, 435 F.3d at 1066.

The Muehler rule, however, justifies only the fact and duration of a detention during the search, and not its manner; Muehler did not provide "unfettered authority to detain [individuals] in any way [officers] see fit." Id. The Meuhler court evaluated the reasonableness of use of handcuffs to effectuate a detention by balancing the intrusion to plaintiff's interests against the threat to officer safety. Muehler, 544 U.S. at 100.

More generally, Muehler draws a distinction between an unreasonable decision to detain and an unreasonable manner of effectuating a detention. The parties do not discuss this distinction. Summers itself focused on the decision to detain, with little discussion of the manner of detention. 452 U.S. at 705. At least some cases considering both the fact and manner of detention have considered them as parts of a single

12

reasonableness inquiry.  See, e.g., Ganwich, 419 F.3d at 1120. Moreover, in some cases these questions cannot be separated, such as when the manner of the detention indicates which purposes, if any, the detention could have served.  United States v. Taylor, 716 F.2d at 701, 707 (9th Cir. 1983).  The court turns to application of the doctrine to the instant facts.

In Summers, police ordered a defendant who was on his front steps back inside while they conducted a warranted search of his home.  Id. at 693.  In evaluating the detention, the Court balanced the degree to which it furthered "substantial law enforcement interests" against the "stigma," "indignity" and "inconvenience" detention caused.  Id. at 699.  On the facts of that case, the Court found the detention unconstitutional. Id. at 702.  See also Ganwich v. Knapp, 319 F.3d 1115, 1120 (9th Cir. 2003) (holding that, in the context of a seizure purportedly incident to arrest, "it is appropriate to balance governmental and individual interests").

Cases following Summers have elaborated on this balancing test, holding that a detention incident to a warranted search is reasonable only if the detention was "carefully tailored" to further law enforcement interests of the type identified in Summers while protecting the detainee's privacy.  Ganwich, 319 F.3d at 1122 (quoting Florida v. Royer, 460 U.S. 491, 500 (1983), see also Meredith v. Erath, 342 F.3d 1057, 1061-62 (9th

13

Cir. 2003). In determining whether a detention incident to a search is reasonable, the court looks at the totality of the circumstances. Meredith, 342 F.3d at 1063.

Application of this test begins with identification of the relevant interests and the degree to which they are advanced or harmed in a particular case. On the government's side, the Supreme Court has enumerated a variety of law enforcement interests, specifically, "preventing flight in the event that incriminating evidence is found; minimizing the risk of harm to the officers; and facilitating the orderly completion of the search, as detainees' self interest may induce them to open locked doors or locked containers to avoid the use of force." Muehler, 544 U.S. at 98 (citing Summers, 452 U.S. at 702-03). Courts will look to the facts of a particular case in determining the extent to which detention actually furthers these interests. For example, in Muehler, because the warrant authorized a search for weapons and evidence of gang membership, there was a high risk to officer safety. 544 U.S. at 100. Thus, the interest in safety justified handcuffing the detainee, although use of handcuffs might not otherwise be justified. Id. Similarly the Ninth Circuit held that detention did not "facilitate the orderly completion of the search while [the detainee was kept] handcuffed face down in a ditch some distance from the house." United States v. Taylor, 716 F.2d 701, 707 (9th Cir. 1983). The Tenth Circuit has held that the

14

balance of interests did not allow police to detain a defendant after stopping him three blocks from the premises for which they had a search warrant because "the police's legitimate law enforcement interest in preventing flight in the event that incriminating evidence was found was far more attenuated than in Summers." United States v. Edwards, 103 F.3d 90, 93-94 (10th Cir. 1996). The court reasoned that the defendant "did not know prior to being stopped that any warrant was being executed" and "thus had no reason to flee." Id. See also United States v. Reinholz, 245 F.3d 765, 778 (8th Cir. 2001).

In the case at bar, defendants claim that the their acts furthered three government interests. First, defendants allege detaining plaintiff at the store parking lot "lessen[ed] the necessity of a vehicular pursuit." Defs.' Statement of Undisputed Facts (UDF) #9. Second, defendants allege detention prevented "having someone recognize her and tip off an occupant of plaintiff's residence or other resident the [sic] named in the search warrant" (UDF) #9.[6] Third, defendants allege the detention furthered officer safety.[7]

---

[6] The court notes that this is not one of the government interests enumerated in Summers. However, neither party has argued that Summers presented an exhaustive list of permissible government interests, nor is there any apparent reason to so hold.

[7] Defendants have not argued that the detention facilitated the orderly completion of the search (the remaining interest identified in Summers, perhaps because the record indicates that defendants actually refused several of plaintiff's offers to assist in the search).

15

Detaining the plaintiff in the interval between the searches did nothing to further these interests. It seems clear, however, that once electing to search plaintiff's car away from the house a reasonable officer would continue to detain the plaintiff in order to insure that she did not alert anyone at the residence of the impending search. The problem with that argument is that the police created the threat by electing to search the car away from the home. Given this conclusion it cannot be said that the detention advanced legitimate police interests.

Opposing the government's interests are the detainee's interests in avoiding the "stigma," "indignity" and "inconvenience" of a seizure, Summers, 452 U.S. at 699, 702, much less the physical abuse occasioned by being handcuffed. In general, "a detention conducted in connection with a search may be unreasonable if it is unnecessarily painful, degrading, or prolonged[.]" Franklin v. Foxworth, 31 F.3d 873, 876 (9th Cir. 1993). The intrusion upon a detainee's interests is greater when she is handcuffed or transported great distances. See United States v. Hogan, 25 F.3d 690, 693 (8th Cir. 1994) (finding significant intrusion when detainee "was stopped three to five miles away, handcuffed, and taken back to his house," such that detention was unreasonable).

Detaining plaintiff during the interval between searches, subjected her to significant indignity. Plaintiff was

16

handcuffed and transported, and her car was left in the store parking lot unlocked and with all the windows down for the duration of the second search. In sum the duration of the illegal detention was the five minutes during transport from the car to the house. I finally conclude, however, that a reasonable officer would not have known the detention was unlawful.

### 3. The Unlawfulness of Defendant's Conduct Was Not Clearly Established

The second step in the Saucier analysis asks whether a reasonable officer in similar circumstances would have thought his conduct violated the constitutional right. See Saucier, 533 U.S. at 205. The right must be "clearly defined" in a particular context.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (internal citation omitted). If an official could have "reasonably but mistakenly believed that his . . . conduct did not violate the right," he is entitled to qualified immunity. Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also

17

Saucier, 533 U.S. at 205. However, officials are charged with knowing the law governing their conduct. Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). Put directly, if the law is so clearly defined that it satisfies Creighton, then a reasonable official could not reasonably yet mistakenly believe the law to be otherwise.

As the above analysis demonstrates, the law is difficult and subtle. I conclude that even assuming a violation of the Fourth Amendment, the law did not clearly establish that the detention was unlawful because it was unreasonable. In particular, the court has not identified any authority addressing when events must be considered to be part of the same search or separate searches. Although the court holds that the events constituted two distinct searches, absent any explicit law on this issue, a reasonable officer could have mistakenly believed that all of the events in this case were part of a single search.

Because the reasonableness of this potential mistake is dispositive of Saucier's second step, the court does not determine whether its Summers conclusion was "clearly established," i.e., whether a reasonable officer could have mistakenly believed that the detention was reasonable even if he had believed that the searches were separate. It follows that under the totality of the circumstances, Detective Perez

18

is entitled to qualified immunity. Accordingly, Defendants' motion for summary judgment on this issue is granted.

**B.  No Evidence Suggests an Unlawful Policy, Custom, or Practice Giving Rise to Monell Liability**

A public entity may only be liable under section 1983 if the constitutional violation occurred as a result of an official policy or custom. Monell v. New York Dep't of Soc. Serv., 436 U.S. 658, 691 (1978). A custom that is not official agency policy may create section 1983 liability if it is "permanent and well-settled." Id. Thus, public agencies cannot be liable on a respondeat superior theory. Instead, plaintiffs must provide evidence of "an affirmative link between the policy and the specific constitutional violation alleged." City of Oklahoma v. Tuttle, 471 U.S. 808, 821 (1985).

Here, plaintiff has not proffered any evidence of any of these things. Summary judgment is therefore granted on the first claim as it relates to the city of Sacramento and the Sacramento Police department.

**C.  The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims**

As discussed above, the court grants summary judgment to defendants on all of plaintiff's federal claims. Although the court may retain supplemental jurisdiction over plaintiff's state law claims, the court declines to do so in this case.

1  See 28 U.S.C. § 1367(c); Arbaugh v. Y & H Corp., 546 U.S. 500
2  (2006).

### IV. CONCLUSION

Defendants' Motion for Summary Judgment is GRANTED. Plaintiff's first claim, as to all defendants, fails to state a claim upon which relief may be granted. The court declines to exercise subject matter jurisdiction over plaintiff's third, fourth, and fifth claims.

IT IS SO ORDERED.

DATED: October 27, 2008.

/s/ Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT